**LEEWITZ et al. v. UNITED STATES.**

No. 46438.

Court of Claims.

Jan. 5, 1948.

LITTLETON, Judge, dissenting in part.

Harry Levine, of New York City, for plaintiffs.

Elizabeth B. Davis, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen. (Andrew D. Sharpe and Lee A. Jackson, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Justice.

The question in this estate tax case is whether, in computing decedent's net estate, deductions are allowable for certain attorney's fees and executors' commissions and losses claimed on the stock of foreign corporations.

In their return plaintiffs claimed a deduction of $47,790.57 for executors' commissions and $10,000 for attorney's fees. Plaintiffs have paid $24,000 of the executors' commissions, leaving an unpaid balance of $23,790.57. The attorney's fees have not been paid. However, plaintiffs have agreed to make such remaining payments and have agreed to pay additional

attorney's fees in the amount of $5,000, making the total of attorney's fees $15,000, which, in view of the size of the estate, we have found reasonable. The executors' commissions are computed in accordance with the statutes of the State of New York. Upon an audit of the estate tax return, the Commissioner disallowed the unpaid balance of executors' commissions and the attorney's fees.

Section 812(b) of the Internal Revenue Code[1] provides that, in determining the net estate, deductions shall be allowed from the gross estate "for administration expenses * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered * * *." The Commissioner, in his regulations, has consistently interpreted administration expenses to include "executors' commissions, and attorney's fees." There is no requirement that the amounts must have been allowed by an order of court or have been paid in order to be deducted. It is sufficient if they are proper deductions in the administration of an estate and will finally be allowed. Bourne et al. v. United States, 76 Ct.Cl. 680. The deductions here claimed satisfy the requirements of the statute and accordingly should be allowed. The defendant does not make any contention to the contrary other than to call attention to the fact that since the executors' commissions are computed under the statutes of the State of New York on the value of the net estate, such commissions would be reduced in the event the court should allow the further deduction claimed by plaintiffs for alleged stock losses.

This brings us to the second phase of the case, namely, whether plaintiffs are entitled to deductions on account of alleged losses on stock of certain foreign corporations. At the time of his death in 1939, the decedent owned stock in four foreign corporations and that stock was included in the estate tax return at a total value of $82,809.49, which value was accepted by the Commissioner. Two of the concerns in which stock was held were engaged in the importing business: one, Markt & Co.

(American Importers) Ltd., being located in Brussels, Belgium; and the other, Markt & Co. (Paris) Ltd., in Paris, France. The third corporation, Nedal Societe Anonyme, was a manufacturer of steel wool with its place of business in Paris, France; and the fourth corporation, Produits Jex Societe Anonyme, which was likewise located in Paris, was the sole selling agent of Nedal Societe Anonyme and that constituted its most important activity. The estate has been in process of administration since the decedent's death in 1939 and during that period has continued to hold the stock of these four corporations.

In 1940 and 1941 the armies of Germany overran France and Belgium. In February and November 1942, German sequestrators were appointed for the two importing concerns and took under their control all the business and properties of those concerns but did not remove any of their property. In June 1942, a German sequestrator was appointed for Nedal Societe Anonyme, the manufacturing concern, and the following August all of its machinery was removed by the Germans. After the machinery was removed, the corporation ceased doing business and has not functioned since that time. During the war period its factory was completely destroyed. In July 1942 a German sequestrator was likewise appointed for Produits Jex Societe Anonyme, who took over the business and properties of that corporation. Since it acted as selling agent for Nedal Societe Anonyme, that activity was entirely cut off on the removal of machinery from the Nedal plant and its principal business was destroyed.

In addition to the deductions from the gross estate for administration expenses, referred to above, provided by Section 812 (b), it is provided that—

"There shall also be deducted losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise, and if at the time of the filing of the return such losses have not been claimed as a deduction for income tax purposes in an income tax return."

---

[1] 53 Stat. 123, 26 U.S.C.A. Int.Rev. Code, § 812(b).

Plaintiffs' contention is that pursuant to the above provision they are entitled to a deduction of the entire value of the stock of those four concerns as included in the estate tax return of the decedent. The facts show that none of the losses claimed have been compensated for by insurance and that no deduction has been claimed for such losses in any income tax return. This leaves for decision the sole question of whether plaintiffs have established a deductible loss within the meaning of the statute as "arising from fires, storms, shipwrecks, or other casualties, or from theft." Narrowed still further, the question would seem to be whether there is an established loss here from "other casualties" within the meaning of that statute.

At the outset it should be observed that we are here concerned with losses for estate tax purposes where the only losses allowable are those above mentioned, as contrasted with losses allowable for income tax purposes, which include business losses, such as from bad debts, and losses on transactions entered into for profit as well as losses of the kind allowed for estate tax purposes. Only one estate tax return is filed and therefore, once a deduction is allowed, there is no chance for adjustment in another estate tax return in the event there should be some recovery on account of the item for which the deduction was allowed. On the other hand, income tax returns are filed on an annual basis and any recoveries with respect to a deduction allowed in one year will be reflected in income adjustments in a subsequent year. This comparison becomes significant as indicating the nature of the losses which are allowable for estate tax purposes; namely, losses from which no recovery would ordinarily be expected, such as from fires or storms. In addition, these losses have reference to destruction of or damage to physical property where the extent of the loss can be fully measured as of the time the loss is allowed without the necessity for future readjustment.

It would be taking a too narrow view of the words "other casualties" under the rule of ejusdem generis to say that a destruction of physical property, for example, as a result of the war, does not constitute a deductible loss within the meaning of Section 812 (b), nor do we understand that defendant contends for such a construction. Our difficulty in this case is with the proof offered as to the losses alleged to have been sustained. The assets in question are stocks in four corporations. In the case of the two importing concerns (Markt & Co. of Paris and Markt & Co. of Brussels), the only proof we have of a loss is that when the German armies overran France and Belgium a sequestrator was appointed for each of these companies who took over their business and properties. This, we have no doubt, caused a reduction in value of those stocks but a mere reduction in value of that character in stock is very different from a loss which would arise from destruction of or damage to property by fire, storm, or shipwreck, and is therefore clearly not allowable as a deduction under the controlling statute.

In the case of the manufacturing concern, Nedal Societe Anonyme, in addition to the concern being taken over by a sequestrator, the machinery of the plant was taken away by order of the German military authorities and the factory was destroyed, apparently by bombing or other similar war activities. What other assets the corporation may have had, we do not know. Were we concerned with a loss to that concern under a corresponding provision of the income tax law, it might well be said that we here have losses from other casualties which would make the loss allowable as a deduction. However, the most we have is strong evidence that there was a reduction in value of the stock but not proof that such stock became worthless from "other casualties". The same holds true as to the stock held by estate of Produits Jex Societe Anonyme, whose principal business was as selling agent for the Nedal concern.

There is no merit in the further contention that the losses in question are allowable by reason of Section 127 of the Internal Revenue Code, as added by Section 156 of the Revenue Act of 1942, 56 Stat. 798, 852, 26 U.S.C.A. Int.Rev.Code, § 127, which makes provision for the treatment of property destroyed or seized dur-

ing war operations and of property located in enemy countries, in view of the difficulty in determining when the actual destruction or seizure occurred or in determining the facts establishing a loss in case the property is in enemy countries. It gives the taxpayer a certain choice of dates as to when the losses may be claimed and makes elaborate provision for the inclusion in income of any later recoveries. The entire section clearly refers to the determination of tax on an annual basis, as in the case of income tax, and at the conclusion of the section it is stated—

"The amendments made by this section shall be applicable to taxable years beginning after December 31, 1940."

It seems clear both from the act itself and the committee reports that this section was designed to provide workable rules for determining for income tax purposes the fact of loss, the time of loss, the extent of loss, and the method of treating eventual recovery of the assets. Not only is it clear that this section is applicable only to income tax returns but the reason it was not extended to cover estate tax returns would seem apparent when we consider that only one return is filed for estate tax purposes and that the losses therein allowed are much more limited than those allowed for income tax purposes where returns are filed from year to year and opportunity exists for readjustment on account of losses allowed in prior years.

The case of United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, upon which plaintiffs rely heavily, is not controlling here for the reason that the court was there concerned with a loss sustained by a corporation under entirely different sections of the law and regulations relating to income tax deductions. It involved a business loss as distinguished from a loss by physical destruction of property and the principal issue before the court was the time such loss occurred. Apparently in order to take care of situations of the kind presented in that case without the necessity for detailed proof, Section 127, supra, was enacted, but as shown above, that section is applicable for income tax purposes and not for estate tax purposes.

The only decided case which has been called to our attention or which we have been able to find dealing with a loss under Section 812 (b), which has been in all the Revenue Acts from 1918 to 1938, is that of Lyman v. Commissioner, 1 Cir., 83 F.2d 811. In that case the estate owned stock which declined greatly in value during the administration of the estate due in part at least to the fact that Great Britain went off the Gold Standard during that period. The court held that such reduction in value did not come within the term "other casualties" under the doctrine of ejusdem generis. We, of course, have more in the case at bar but, as indicated above, it falls short of bringing plaintiffs within the terms of the statute. It accordingly follows that the losses claimed can not be allowed.

Judgment in favor of plaintiffs will be suspended pending the filing of a stipulation by the parties of the amount thereof on account of the allowance of additional executors' commissions and attorney's fees in acordance with this opinion.

MADDEN, WHITAKER, and HOWELL, Judges, concur.

LITTLETON, Judge (dissenting in part).

I am of the opinion that the 116 shares of stock of the Produits Jex Societe Anonyme, item 60, finding 2, in the amount of $23,200 and the 162 shares of the stock of the Nedal Societe Anonyme, item 62, finding 2, in the amount of $3,431.16 should be allowed as a loss deduction in the estate tax return, under the facts set forth in findings 9 and 10.